**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: SVENHARD'S SWEDISH BAKERY, | No. 23-60045 |
| *Debtor*. | BAP No. 23-1001 |
| SVENHARD'S SWEDISH BAKERY, | OPINION |
| *Appellant*, | |
| v. | |
| BAKERY AND CONFECTIONARY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, | |
| *Appellee*. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Gan, Lafferty III, and Brand, Bankruptcy Judges, Presiding

Argued and Submitted May 20, 2025
San Francisco, California

Filed September 12, 2025

Before:  Marsha S. Berzon, Michelle T. Friedland, and
Salvador Mendoza, Jr., Circuit Judges.

Per Curiam Opinion

## SUMMARY[*]

### Bankruptcy

The panel affirmed, on a different ground, the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's order denying Chapter 11 debtor in possession Svenhard's Swedish Bakery's motion to assume and assign a contract.

The bankruptcy court denied the motion because the contract was not "executory" within the meaning of 11 U.S.C. § 365(a) and, in the alternative, because the contract was a "financial accommodation" and therefore not assumable or assignable under § 365(c)(2). The Bankruptcy Appellate Panel affirmed on the first ground, leaving the second undecided.

The panel affirmed on the second ground, holding that the contract was a financial accommodation and therefore not assumable or assignable. The contract was a settlement agreement between Svenhard, a commercial bakery that had sold its business to United States Bakery and had closed one

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

of its facilities, and the Bakery and Confectionary Union and Industry International Pension Fund.  The Pension Fund asserted that, under the Employee Retirement Income Security Act, Svenhard was subject to withdrawal liability and delinquent-contribution liability.  Under § 365(c)(2), a debtor in possession is prohibited from assuming or assigning any contract "to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor."  Consulting Black's Law Dictionary, the panel concluded that the ordinary and common meaning of "financial accommodation" at the time of enactment of § 365 included contracts to forebear or reduce payments to which one was otherwise entitled, if those contracts were agreed upon to aid a debtor's poor financial condition.  The panel concluded that the settlement agreement was plainly such a contract, and therefore was not assumable or assignable.

## COUNSEL

Derrick Talerico (argued), Weintraub Zolkin Talerico & Selth LLP, Los Angeles, California, for Appellant.

Joshua B. Shiffrin (argued), Cole Hanzlicek, and Joshua A. Segal, Bredhoff & Kaiser PLLC, Washington, D.C.; Daniel L. Egan, Wilke Fleury LLP, Sacramento, California; for Appellee.

**OPINION**

PER CURIAM:

The Bankruptcy Code limits the circumstances under which a debtor's contracts survive bankruptcy proceedings. In particular, under § 365 of the Bankruptcy Code, a "debtor in possession"—"a debtor that is the subject of a Chapter 11 case and who has not been ousted from possession by the appointment of a Chapter 11 trustee," 8 Michael A. Wolf, *Powell on Real Property* § 57A.02 (2025)—may, subject to court approval, "assume or reject any executory contract" to which the debtor is a party and, if the executory contract is assumed, may assign the debtor's rights and obligations under that contract to another person or entity, 11 U.S.C. § 365(a), (f); *id.* § 1107(a).   But that power is subject to exceptions.   As relevant here, a debtor in possession is prohibited from assuming or assigning any contract "to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor."  *Id.* § 365(c)(2).

In this case, the bankruptcy court denied a motion to assume and assign a contract brought by Debtor-Appellant Svenhard's Swedish Bakery ("Svenhard").  The bankruptcy court held that the particular contract to which Svenhard is a party is not "executory" within the meaning of § 365(a) and, in the alternative, that it is a "financial accommodation" and therefore not assumable or assignable under § 365(c)(2). The Bankruptcy Appellate Panel ("BAP") affirmed on the first ground, leaving the second undecided.

We affirm on the second ground, holding that the contract is a financial accommodation, without reaching whether it is executory.

# I.

## A.

Svenhard was a commercial bakery that owned facilities in Oakland, California, and Exeter, California. Svenhard had long been a participating employer in the Bakery and Confectionary Union and Industry International Pension Fund ("the Pension Fund") and so was obligated to make pension contributions on behalf of certain employees covered by and participating in the Pension Fund.

In early 2014, financial difficulties prompted Svenhard to sell its business to United States Bakery ("USB"). As part of that sale, Svenhard agreed to transfer the Exeter facility and its equipment to USB, to lease the Exeter facility and its equipment back from USB for five years, and to close the Oakland facility. In 2015, Svenhard proceeded to close the Oakland facility and to move its operations to Exeter. As part of that process, Svenhard terminated its Oakland workforce and stopped contributing to the Pension Fund.

The Pension Fund notified Svenhard that it believed that Svenhard had effectively withdrawn from the Pension Fund and was subject to two liabilities under the Employee Retirement Income Security Act of 1974 ("ERISA"): a withdrawal liability of approximately $50 million (capped by ERISA to approximately $39 million) and a delinquent-contribution liability of more than $500,000 for failing to make severance and vacation payouts. Svenhard did not timely contest those liabilities through the procedures provided by ERISA. *See* 29 U.S.C. § 1399(b). Instead, Svenhard gave the Pension Fund financial information describing Svenhard's "limited assets."

The Pension Fund ultimately agreed to settle Svenhard's liabilities ("Settlement Agreement") for a significantly reduced amount, to be paid in monthly installments over twenty years. Specifically, Svenhard promised to pay $12,500 each month for 240 months (totaling $3 million) to satisfy the withdrawal liability. Svenhard also agreed to pay the delinquent-contribution liability, with interest, in monthly installments of $8,580.80. The Settlement Agreement expressly indicated that the Pension Fund agreed to that arrangement because, after reviewing Svenhard's financial information, the Pension Fund concluded that pursuing the full value of its claims against Svenhard "would almost certainly cause . . . secured creditors to assert their rights to Svenhard's assets, leaving little or nothing for the Pension Fund" to recover. The Settlement Agreement further stated that the reduced monthly payments would likely allow Svenhard "to be able to pay while continuing to operate its business." A few months later, however, Svenhard ceased operations and defaulted on the Settlement Agreement.

**B.**

Around the same time that Svenhard defaulted on the Settlement Agreement, it filed a Chapter 11 bankruptcy petition. In those proceedings, USB filed a motion to convert Svenhard's bankruptcy from Chapter 11 to Chapter 7. The bankruptcy court denied that motion, and USB appealed—first to the United States District Court for the Eastern District of California, which dismissed the appeal for lack of jurisdiction, and then to our court. While that appeal was pending in our court, Svenhard, USB, and a committee of Svenhard's unsecured creditors participated in a mediation facilitated by the Ninth Circuit Mediation Program. Although the Pension Fund was one of Svenhard's

unsecured creditors, it recused itself from the mediation at Svenhard and USB's request.

Through that mediation, Svenhard and USB reached a conditional compromise to settle their litigation. That compromise was contingent upon, among other things, a ruling from the bankruptcy court allowing the Settlement Agreement between Svenhard and the Pension Fund to be assumed by Svenhard and assigned to USB.

## C.

Pursuant to its compromise with USB, Svenhard filed two motions in bankruptcy court. First, Svenhard filed a motion for approval of the compromise under Federal Rule of Bankruptcy Procedure 9019. Second, Svenhard filed a motion under § 365 to assume the Settlement Agreement as an "executory" contract and to assign it to USB "as a valid and subsisting contract." The Pension Fund opposed Svenhard's motions, contending that the Settlement Agreement could not be assumed or assigned under § 365 and that a proceeding on a motion to assume and assign was not an appropriate proceeding in which to decide the validity of the Settlement Agreement.[1]

The bankruptcy court denied Svenhard's motion to assume and assign on two grounds: first, that the Settlement Agreement is not "executory" within the meaning of

---

[1] The Pension Fund has asserted that the Settlement Agreement is voidable for fraud because Svenhard "failed to disclose to the Pension Fund the scope of its relationship with USB, let alone that USB was covertly encouraging negotiations to reduce the outstanding liabilities owed to the Pension Fund." Those issues are the subject of separate litigation in the United States District Court for the District of Oregon. *See Bd. of Trs. of the Bakery & Confectionary Union & Indus. Int'l Pension Fund v. U.S. Bakery, et al.*, No. 3:21-cv-00617-SI.

§ 365(a); and, second, that it is a "financial accommodation" that cannot be assumed or assigned under § 365(c)(2).  The bankruptcy court declined to decide whether the Settlement Agreement is a "valid and subsisting" contract, reasoning that it would be procedurally improper to do so on a motion to assume and assign.

Svenhard appealed to the BAP, which affirmed the bankruptcy court's decision that the Settlement Agreement is not "executory" without deciding whether it is a "financial accommodation" under § 365(c)(2).  The BAP also affirmed the bankruptcy court's refusal to decide the validity of the Settlement Agreement.

Svenhard timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 158(d). "Because appeals from the BAP are subject to *de novo* review, [we] independently review[] the Bankruptcy Court's decision.  We review conclusions of law *de novo* and conclusions of fact for clear error."  *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002).

Svenhard argues that the Settlement Agreement can be assumed under 11 U.S.C. § 365(a) because it is "executory." Svenhard further argues that the financial-accommodation exception under § 365(c)(2) does not apply because the Settlement Agreement is "not a contract to make a loan, nor is it a contract to extend money or credit to Svenhard[]."  We need not and do not decide whether the Settlement Agreement is "executory" because—even if we were to accept that the Settlement Agreement is "executory"—we conclude that it constitutes a "financial accommodation" that is not assumable or assignable under § 365(c)(2).

We begin with the text of the Bankruptcy Code.  Section 365(c) provides that a debtor in possession "may not assume or assign any executory contract . . . if . . . such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor."  11 U.S.C. §§ 365(c), 1107(a).**2**  In interpreting that provision, we apply the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, [and] common meaning."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Because Congress did not define the term "financial accommodations," "'we follow the common practice of consulting dictionary definitions . . .' and look to how the term[] [was] defined 'at the time [the statute] was adopted'" to determine that term's ordinary, contemporary, and common meaning.  *United States v. TRW Rifle 7.62x51mm Caliber*, 447 F.3d 686, 689 (9th Cir. 2006) (third alteration in original) (quoting *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005)).  When § 365(c)(2) of the Bankruptcy Code was enacted in 1978, *see* An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub. L. No. 95-598, 92 Stat. 2549 (1978), Black's Law Dictionary defined "accommodation" as "[a]n arrangement or engagement made as a favor to another" or "something done to oblige, usually . . . a loan of money or commercial paper," *Accommodation*, *Black's Law Dictionary* (rev. 4th ed. 1968).  Other dictionaries from that period were in accord.

---

2 Section 365(c) refers to the "[t]he trustee."  Section 1107(a) provides that a debtor in possession "shall have all the rights . . . and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter," subject to certain exceptions not relevant here.

*See Accommodation*, *The Am. Heritage Dictionary of the Eng. Language* (New College ed. 1976) ("A loan or other financial favor."); *Accommodation*, *Webster's Third New Int'l Dictionary* (1976) ("[S]omething that is supplied for convenience or to satisfy a need.").  An agreement to accept as full payment much less than the amount contractually due in recognition of the debtor's financial inability to pay the full amount is assuredly a "financial favor," and one provided "to satisfy a need" of the debtor.  Thus, the ordinary and common meaning of "financial accommodations" at the time of enactment included contracts to forebear or reduce payments to which one was otherwise entitled, if those contracts were agreed upon to aid a debtor's poor financial condition.[3]

The Settlement Agreement is plainly such a contract.  The Settlement Agreement itself memorialized that Svenhard was liable for tens of millions of dollars that it could not fully repay because of its "limited assets," and that the Pension Fund accordingly agreed to "accept a schedule of payments . . . that Svenhard [was] likely to be able to pay while continuing to operate its business."  In other words, the Settlement Agreement involves the forbearance and reduction of the amount to which the Pension Fund would otherwise be entitled, and the Pension Fund agreed to that

---

[3] The definition of "accommodation" has remained substantially the same.  *See, e.g.*, *Accommodation*, *Black's Law Dictionary* (12th ed. 2024) ("A loan or other financial favor."); *Accommodation*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2022) ("[S]omething supplied for convenience or to satisfy a need."); *Accommodation*, *The Am. Heritage Dictionary of the Eng. Language* (3d ed. 2000) ("A financial favor.").

arrangement expressly because of Svenhard's poor financial condition.[4]

Svenhard argues that the term "financial accommodations" includes only loans or other extensions of money or credit, neither of which are present here. But, again, the ordinary meaning of "accommodation" at the time of § 365's enactment was "something done to oblige, *usually*"—not exclusively—"a loan of money or commercial paper." *Accommodation*, *Black's Law Dictionary* (4th ed. 1968) (emphasis added); *see also Accommodation*, *The Am. Heritage Dictionary of the Eng. Language* (New College ed. 1976) ("A loan or *other financial favor*." (emphasis added)).

Also, "[t]he superfluity canon guides [us] to infer that Congress did not intend to make any portion of a statute superfluous," *In re Pangang Grp. Co.*, 901 F.3d 1046, 1056 (9th Cir. 2018), and it requires us to "give effect to every word of a statute wherever possible," *id.* (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004)). Although there may be

---

[4] Svenhard argues that even if one purpose of the Settlement Agreement was to reduce Svenhard's liabilities because of its poor financial condition, another purpose was to "settle[] a pending dispute between the parties over the *amount* of those original liabilities." That purported other purpose does not comport with the Settlement Agreement's terms. On appeal, Svenhard suggests that its pre-settlement withdrawal liability may have been around $23 million—not $39 million as stated in the Settlement Agreement. The terms of the Settlement Agreement provided that Svenhard would pay the Pension Fund only $3 million for its withdrawal liability. That figure is so far below either liability figure—$23 million or $39 million—that it could not have been meant to settle the amount actually due. Rather, the Settlement Agreement's purpose was to accommodate Svenhard's inability to pay its withdrawal liability—whether $23 million or $39 million—by requiring payment only of a much lower amount.

overlap between what constitutes a "loan," "debt financing," or "financial accommodations" under § 365(c)(2), that Congress used each of those terms indicates that each should carry distinct meaning. Otherwise, Congress "could have omitted the word[s] ["financial accommodations"] . . . altogether." *Carcieri v. Salazar*, 555 U.S. 379, 391 (2009). Our obligation "to give effect, if possible, to every word Congress used" therefore counsels reading "financial accommodations" to include more than only loans or other debt financing. *Id*. (quoting *Reiter v. Sonotone Corp*., 442 U.S. 330, 339 (1979)).

The cases on which Svenhard primarily relies to argue that a contract is a "financial accommodation" only if it involves loans or other debt financing—*In re Easebe Enterprises, Inc.*, 900 F.2d 1417 (9th Cir. 1990), *overruled on other grounds by In re Robert L. Helms Construction & Development Co.*, 139 F.3d 702 (9th Cir. 1998) (en banc), and *In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir. 1991)—do not support that proposition.

In *Easebe*, we held that a contract through which a debtor would receive property in exchange for a promise to pay fell under § 365(c)(2)'s prohibition on assumption and assignment. 900 F.2d at 1420. In so holding, we explained that § 365(c)(2) "prohibits the assumption of debt financing or *other financial accommodations* as well as loans," and that, like here, "the transaction at issue [did] not require the [counterparties] to lend [the debtor] any funds." *Id.* (emphasis added). We acknowledged that § 365(c)(2) should be "strictly construed so as not to extend to an ordinary contract to provide goods and services that has incidental financial accommodations or extensions of credit," but that recognition does not help Svenhard here. *Id*. at 1419 (citation modified). The Settlement Agreement is

not a contract for goods and services that has only "incidental" financial accommodations. No goods or services were exchanged as part of the Settlement Agreement; its only apparent purpose was to accommodate Svenhard's financial needs and thereby ensure that the Pension Fund received *some* payment on Svenhard's obligation. Thus, our holding here that the Settlement Agreement falls under § 365(c)(2) is consistent with *Easebe*.

Our decision in *Sun Runner* is also consistent with the result we reach here. In *Sun Runner*, we held that a lender's agreements to offer loans to third parties constituted "financial accommodations" to the debtor because those third-party loans were "an indispensable means of financing the debtor's business." 945 F.2d at 1092. We observed that "[t]he term 'financial accommodation' has been defined as the extension of money or credit to accommodate another," but we did not conclude that the term was *limited* to loans or other extensions of money or credit. *Id*. Such a conclusion would have required us to stray beyond the particular facts of that case, which involved loans. In any event, agreeing to take less than ten cents on the dollar as payment of an obligation is tantamount to an "extension of money" to the debtor, in the amount that will not have to be paid.

Although our precedents have not defined the entire scope of what may constitute "financial accommodations" under § 365(c)(2), the plain text of the statute indicates that "financial accommodations" must include more than just loans and other debt financing. Because the Settlement Agreement falls within the ordinary meaning of "financial accommodations," it accordingly cannot be assumed or assigned under § 365(c)(2).

In light of that conclusion, we need not reach Svenhard's argument that, had the bankruptcy court granted the motion to assume, the bankruptcy court should also have declared that the Settlement Agreement was valid and subsisting.

## III.

For the foregoing reasons, we **AFFIRM**.